(59 App. Div. 334.)

## In re CHADWICK.

(Supreme Court, Appellate Division, Third Department. March 6, 1901.)

1. TAXATION—ILLEGAL ASSESSMENT—RESIDENT LAND—ESTATE.

Where resident land is assessed to an estate, the assessment is void, and the amount of tax so erroneously assessed is properly entered on the assessment roll for the next year as "omitted" from the previous assessment.

2. SAME—UNCOLLECTED TAX—CERTIFICATE BY SCHOOL TRUSTEES—REFUNDING—TAX SALE—REDEMPTION.

Where trustees of a school district assessed resident land to an estate, and, on the collector's return of the tax as uncollected, certified the same to the county treasurer, as authorized by Laws 1894, c. 556, art. 7 (Consolidated School Law), who paid the tax, which was transferred to the town assessment roll by order of the board of supervisors, the certificate showed on its face that the assessment was void; and hence a purchaser

of the property who paid the taxes so illegally assessed, in order to redeem the property from a tax sale, was entitled to have the same refunded.

Appeal from special term, Tioga county.

Application of Zalia M. Chadwick to have certain taxes refunded. From an order denying an application for an order directing the board of supervisors of the county of Tioga to refund certain taxes claimed to have been illegally assessed, applicant appeals. Reversed.

Argued before PARKER, P. J., and KELLOGG, EDWARDS, SMITH, and CHASE, JJ.

Frederick E. Hawkes, for appellant.
Fred W. Clifford, for respondent.

KELLOGG, J. It appears from the papers before us that in 1895 the assessors of the town of Barton, in Tioga county, assessed certain real estate in said town to: "Warford, Cyrus, Est. G. H. Grafft, Agt.,"—at the sum of $10,000; and thereafter in that year the board of supervisors levied thereon a tax of $80, and directed the collector to collect the same from the person to whom assessed; that is, the estate of Cyrus Warford; G. H. Grafft, agent. The tax was not collected. In February, 1896, the applicant, Zalia M. Chadwick, purchased the property. In 1896, after such purchase, the assessors of the town of Barton assessed the same property to the then owner, Zalia M. Chadwick, and fixed a valuation for that year. In a separate line on the same roll they at the same time reassessed the same property as "omitted" from the roll of 1895, and at the valuation fixed in 1895; and the board of supervisors levied a tax for the year 1896, and also carried out as against the "omitted" assessment the tax at the rate fixed in 1895, viz. $80. I think this was properly done, and as to the tax the applicant cannot successfully claim that the tax was illegally or improperly assessed or levied. The assessors had a right to treat this property as having been wholly "omitted" from the assessment roll of 1895. The assessment of the property as resident land, and assessing it to an estate, was a failure to assess at all. The assessment was wholly void. Trowbridge v. Horan, 78 N. Y. 439; Cromwell v. McLean, 123 N. Y. 486, 25 N. E. 932; Adams v. Supervisors, 18 App. Div. 415, 46 N. Y. Supp. 48. Section 33 of the Tax Law (chapter 908, Laws 1896,) authorizes this method of procedure on the part of assessors. The duty of the board of supervisors was to set down or levy the tax at the rate fixed for the year when the assessment was omitted, and I see no error committed by either assessors or supervisors in the proceedings taken as to these taxes, which were the state and county taxes for general purposes.

The petition for the refunding of the foregoing tax presented to the board of supervisors, and thereafter to the county court of Tioga county, also mentioned another tax,—a school tax,—which the board of supervisors also refused to refund, and the court refused to order it refunded. The facts as to this school tax appear by the petition to be these, and these facts are undisputed: In 1895 the trustees of the school district in which the real estate mentioned is situated, as-

sessed the property to "Cyrus Warford Est.," and as resident lands are assessed, and levied thereon or against "Cyrus Warford Est." a tax of $68, and issued the usual warrant to the school-district collector for its collection. The warrant was returned to the trustees of the school district with the collector's affidavit that he was unable to collect this tax. A certificate was then made by the trustees, and presented to the treasurer of the county of Tioga, who presumably paid it. The treasurer then presented to the board of supervisors, at a meeting in 1896, this certificate, and the supervisors assessed the tax, $68, to Zalia M. Chadwick, the applicant here. This tax was not paid, and apparently was returned by the town collector as uncollectible; and in 1897 the board of supervisors reassessed this tax with the $80 unpaid tax hereinbefore mentioned, together with 5 per cent. penalty, making in all $155.40, and assessed it upon the land as nonresident. In September, 1898, the county treasurer of Tioga county sold the premises for $196.22, being the tax so reassessed, with 5 per cent. penalty, $24.57 interest, and $7.85 expenses of sale; and in May, 1899, to redeem the property, the applicant paid to the treasurer of Tioga county the sum of $210.06.

There does not appear to be any statute which authorizes the method of procedure for the collection of a school tax so erroneously assessed. What authority there is, is to be found in the consolidated school law (chapter 556, Laws 1894). Article 7 of that law covers the whole subject. The trustees, like town assessors, are required to assess real estate to "the person or persons or corporation owning or possessing the same at the time such tax list shall be made out." That they cannot assess lands to an "estate" needs no argument. The same reasoning which carries to the conclusion that such an assessment is unauthorized when made by a town assessor is applicable here. The assessment by the trustees, therefore, was void, and the property was, in law, "omitted" from the trustee's tax list. It was not assessed to any person or corporation, nor was it assessed as nonresident land. The manner prescribed for trustees to be pursued in the assessment of nonresident land is declared to be the "same manner as required by law from town assessors in making out the assessment roll of their town." Section 71, art. 7, of the consolidated school law. The only cure for a tax list which has omitted property in the school district which should have been assessed, or cure for any other error, is that specified in section 84 of this school law. The tax list may be amended and corrected by the trustees of the school district, with the approval of the superintendent of public instruction. The town assessors cannot place upon the roll any property omitted from a district school tax list, nor can the board of supervisors. They have nothing whatever to do with it. The trustees alone can do that, with the consent of the superintendent of public instruction; and this must be done, if done at all, before any certificate is made by the trustees to be presented to the county treasurer, for such certificate must follow the tax list in all respects (section 73 of school law), and be "a true transcript thereof." When it appears to the county treasurer that a valid assessment upon land was made and is shown by the transcript of the school district tax

list, he may pay the same, and deliver this certificate, which is a transcript of the tax list, to the board of supervisors, and the duty of the board of supervisors is wholly clerical; that is, they must cause the description of the real estate given in the certificate or school district tax list to be transferred to the town assessment roll, together with the tax therein appearing unpaid, "with seven per cent. of the amount in addition thereto,"· and thereafter such taxes are enforced in the same manner as the state and county taxes. The county treasurer is not authorized to pay any tax improperly levied, nor has the board of supervisors any right to transfer to the assessment roll any such tax. The certificate of the school-district trustees, being a transcript of the school district tax list, is information to both treasurer and supervisors as to any infirmity appearing on the face of the certificate. Here it is alleged, and not denied, that this tax list showed an assessment of real property to "Cyrus Warford Est." The certificate is required to be a transcript of this, and the treasurer and supervisors were so informed that the assessment was void. The tax should not have been paid by the treasurer, and the supervisors should have refused to transfer the void tax to the town assessment roll. As before said, the whole scheme for levying and collecting school taxes is contained in this article 7, and it is a complete method in itself, and should be substantially followed. If any different method be followed, or there be a substantial departure from the method here pointed out, the tax will be illegally imposed, and the party in interest will be entitled to have the tax refunded. Adams v. Supervisors, 18 App. Div. 415, 46 N. Y. Supp. 48, affirmed in 154 N. Y. 619, 49 N. E. 144. The county court of Tioga county should have granted the application of the petitioner, and should have ordered the school tax refunded, together with all penalties and interest and costs and expenses charged thereon, and included in the sum $210.06 paid by the applicant, and interest thereon from May 29, 1899.

The order appealed from is reversed, with $10 costs and disbursements, with leave to the appellant to renew the application in the county court. All concur; PARKER, P. J., and SMITH, J., in result.