John McKie, as Tax Collector in the Town of Gates, Respondent, v. Roscoe C. E. Brown et al., Appellants, Impleaded with Another.

Tax — special assessment for construction of sewer — when such assessment valid, although it would be void under General Tax Law for insufficient description.

A special statute, (L. 1892, ch. 603, and acts amendatory thereof) which provides for the construction of a sewer, also directs the commissioners of sewerage to make and file a map describing the lands to be assessed which map "may be used in evidence in any suit or proceeding." A map was so filed which accurately described the lands affected, and the reference thereto in the assessment roll is sufficiently accurate to identify the lands there referred to as being the same lands set forth on the map. *Held*, that although the assessment would be void under the general statute as to taxation, by reason of insufficient description, yet such map and the assessment roll taken together are sufficient to create a lien upon the land within the purview of the special statute.

*McKie* v. *Brown*, 130 App. Div. 905, affirmed.

(Argued May 11, 1910; decided June 7, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered February 5, 1909, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Eugene Van Voorhis* for appellants. The assessment is void on its face. The statute requires that the assessment

should be to the owner or occupant if known, or "shall describe said lots and parcels of land by any description that shall fairly distinguish the same without reference to owners or occupants." (*McCue* v. *Supervisors*, 162 N. Y. 235; *Trowbridge* v. *Horan*, 78 N. Y. 439; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Cruger* v. *Dougherty*, 43 N. Y. 107; *May* v. *Traphagan*, 139 N. Y. 478; *Matter of N. Y. C. & H. R. R. R. Co.*, 90 N. Y. 342; *Bank of Utica* v. *Mersereau*, 3 Barb. Ch. 531; *Tallman* v. *White*, 2 N. Y. 66; *Sharp* v. *Johnson*, 4 Hill, 92; *Peck* v. *Mallams*, 10 N. Y. 509; *Underhill* v. *Keirns*, 54 App. Div. 214; 170 N. Y. 587.)

*John A. Barhite* for respondent. The assessment roll complies with the statute and the assessment constitutes a valid lien upon the land. (L. 1892, ch. 603; *Collins* v. *Long Island City*, 132 N. Y. 321; *Matter of Munn*, 165 N. Y. 149; *Haight* v. *Mayor, etc.*, 99 N. Y. 280; *People ex rel. Hutchinson* v. *O'Brien*, 53 Hun, 580; *People ex rel. M. & M. R. Co.* v. *Garmon*, 63 App. Div. 530.)

Werner, J. The plaintiff is a tax collector appointed by the county judge of Monroe county to collect and enforce payment of assessments for the construction of what is popularly known as the West Side sewer, which runs from the town of Gates through the twentieth, fifteenth and tenth wards of the city of Rochester. His powers and duties are defined in chapter 620, Laws of 1904. Under the authority conferred upon him as such collector pursuant to said act, he brought this action to foreclose the lien of an assessment for the construction of said sewer for a tax levied upon the lands of the defendants Brown in the town of Gates. Upon the trial the owners made a number of objections to the validity of the assessment, which it is unnecessary now to consider in detail, since the issue upon this appeal has been narrowed to two questions: 1. Is the assessment invalid upon its face? 2. Did the appearance of the objectors on grievance day, and the scope of their written objections then presented, operate as a waiver of the objections urged upon this

appeal? Since our views upon the first of these questions also dispose of the second, we shall not discuss the latter.

The West Side sewer was constructed under special acts of the legislature. (Laws 1892, chap. 603, as amended and supplemented by Laws 1895, chap. 438; Laws 1896, chap. 650; Laws 1898, chap. 315; Laws 1904, chap. 620.) This legislation, so far as pertinent to the present controversy, directed that the commissioners of sewerage proceed, by personal view of the lands and otherwise, to determine the course of the sewer; the lands through which the same should be constructed; the several parcels of lands to be benefited thereby, and to cause an accurate survey of all such lands and a map thereof to be made, showing the course and extent of said sewer, the lands to be drained thereby, the lands deemed to be benefited, together with the names of the owners and occupants of such lands, so far as the same with reasonable diligence can be ascertained. Upon the completion of the survey, and before the construction of the sewer, the commissioners were directed to cause said map, which was to be certified and signed by them, to be filed in the office of the clerk of Monroe county, and the statute declares that "said map, or a certified copy thereof, may be used in evidence in any suit or proceeding in this state." The statute further directed the commissioners to apportion the cost of the sewer "upon the several tracts or parcels of land included in said map, * * * and the owner or occupants thereof, if ascertained, as they shall deem to be benefited by such sewer in proportion to the amount of benefit which each shall be deemed by said commissioners to receive therefrom. Such apportionment shall be in the usual form of an assessment roll, and shall specify the names of the owners or occupants of the lots or parcels of land intended to be assessed, if known, or shall describe said lots and parcels of land by any description that shall fairly distinguish the same, without reference to the owners or occupants." The statute further provided for a grievance day, for a review of assessments by the commissioners, and that "when such assessment roll shall be completed

as revised, the same, or a copy thereof shall be filed with the county clerk of Monroe county, and from the time of such filing, shall be and remain a lien and charge upon the lands against which it is made until fully paid, or otherwise discharged; and shall also create a personal obligation or liability against the person assessed," etc.

The commissioners caused to be made maps and surveys which accurately describe the lands owned by the defendants Brown, but in their assessment roll they described the owner or occupant as " D. D. S. Brown Est.; " the street as Buffalo road; the side of street " N; " the area of acres 62; the aggregate of assessment " $16,144.71." Upon the trial it appeared that the defendants Roscoe C. E. Brown, Le Grand Brown and Selden S. Brown were the heirs at law of D. D. S. Brown, to whose estate the lands had always been assessed, and that these heirs had owned the lands for a period of fifteen years. It further appeared from the map that the lands in question consisted originally of one piece of about seventy-five acres which fronted on the north side of the Buffalo road; that at the time when this assessment was made the property had been divided by the sale of about ten and a half acres to one McKee, so that a portion of the lands, consisting of about forty-six acres, fronted on the Buffalo road, and the remainder of eighteen or nineteen acres was cut off or segregated by the intervening piece sold to McKee. Upon these facts the appellants now claim that the assessment in form against the estate is void upon its face, and that the description of the lands as being on the north side of the Buffalo road and consisting of sixty-two acres is too indefinite to identify the land.

If we look to the form of the assessment roll alone the assessment against the estate of D. D. S. Brown is clearly void. An assessment of land for taxation in the name of the " estate " of a person, without any qualifying or explanatory description, is void on its face. (*Matter of McCue* v. *Supervisors of Monroe County,* 162 N. Y. 235; *Cromwell* v. *MacLean,* 123 N. Y. 474; *Trowbridge* v. *Horan,* 78 N. Y. 439; *Cruger* v. *Dough-*

*erty,* 43 N. Y. 107.) It must also be conceded that the assessment roll alone does not so accurately describe the premises as to support a title derived under a tax sale for unpaid general taxes. (*Matter of N. Y. C. & H. R. R. R. Co.,* 90 N. Y. 342, and cases cited.) But this is a proceeding under a special statute which directs the commissioners to make and file a map describing the lands to be assessed, and provides that such map may be used in evidence in any suit or proceeding in this state. The map filed accurately describes the lands of the appellants Brown, and the reference thereto in the assessment roll is sufficiently accurate to identify the lands there referred to as being the same lands set forth on the map. All this would still be insufficient to impose a personal liability upon the owners, but, as that question is not in the case, we shall not discuss it. The map and the assessment roll taken together are sufficient to create a lien upon the land within the purview of this special statute, and that is all that is necessary to decide upon this appeal.

The tax imposed upon these owners is manifestly burdensome. That there are some technical inaccuracies in the work of the commissioners is apparent in the case at bar. But such hardships on the one hand and such defects on the other are inevitable in public improvements of great magnitude and difficulty. Since it is manifestly impossible to adapt the rigors of taxation to the individual needs and desires of all who are taxed, and practically impossible to attain absolute perfection or accuracy on the part of taxing officers, the ultimate question must always be whether, in the light of the statute under which a tax is laid, there has been such a substantial compliance with the law that it is legal and just to impose the prescribed penalty for non-payment of the tax. We think that in the case at bar the prescription of the statute was substantially followed, and the judgment should, therefore, be affirmed, with costs.

Cullen, Ch. J., Haight, Willard Bartlett and Chase, JJ., concur; Hiscock, J., not voting.

Judgment affirmed.